**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOAN M. MONDA,** ) | **CASE NO. 1:09CV2618** |
| ) | |
| **Plaintiff,** ) | **JUDGE BENITA Y. PEARSON** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| **of Social Security,** ) | |
| ) | |
| **Defendant.** ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Joan M. Monda ("Monda"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Monda's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be vacated and remanded for further proceedings consistent with this opinion.

### I. Procedural History

On October 24, 2006, Monda filed an application for SSI alleging a disability onset date of April 1, 2005,[1] and claiming that she was disabled due to anxiety related and affective disorders. Her application was denied both initially and upon reconsideration. Monda timely requested an administrative hearing.

---

[1] An SSI claimant is not entitled to benefits prior to the date the claimant files an application; and, therefore, the relevant time frame begins with the month of the filing. *See* 20 C.F.R. §§ 416.330, 416.335. Here, the relevant time frame began in October, 2006.

On April 23, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Monda, represented by counsel, testified. Edith J. Edwards, an impartial Vocational Expert ("VE") also testified. On May 14, 2009, the ALJ found Monda was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 40 at the time of her administrative hearing, Monda is a "younger individual" under social security regulations. *See* 20 C.F.R. § 416.963(c). Monda has a general education development diploma and no past relevant work experience. (Tr. 17.)

### *Hearing Testimony*

At the hearing, Monda testified to the following:

- She lives with her two sons, ages 12 and 15. (Tr. 41.)

- She is five feet three inches tall and weighs 255 pounds. (Tr. 42.)

- She does not drive since her license was suspended for not purchasing insurance. (Tr. 42.)

- She experiences a great deal of anxiety and fear of death. (Tr. 43.) She has prescriptions for Zoloft and Klonopin, but is not taking them because she is afraid of the side effects. (Tr. 44, 60.)

- She was prescribed a CPAP mask for sleep apnea, but she does not wear it as it makes her feel like she will choke. (Tr. 52.)

The ALJ posed the following hypothetical to the VE:

Ms. Edwards, I'd like for you to assume a person of the same age, education and work background as Ms. Monda capable of medium work provided, the work not involve more than occasional contact with the co-workers, supervisors or the public and not require more than the performance of simple and routine one or two-step task activities as the result of moderate limitations and concentration, persistence or pace. Would there be any unskilled, medium, light or sedentary work that one can do with that profile?

(Tr. 63.)

The VE testified that such an individual could work as a janitor/industrial cleaner at the medium level (28,125 positions in Ohio; 750,000 in the national economy); kitchen helper at the medium level (11,775 in Ohio; 314,000 nationally); cleaner/housekeeping at the light level

2

(28,125 in Ohio; 750,000 nationally). (Tr. 64.)

The ALJ then asked the VE the following:

> Now, if the individual were to suffer from either marked limitations in their ability to socially interact with co-workers, the public or supervisors on the one hand or be markedly limited in their ability to maintain pace, persistence, concentration on the other, would either of those marked limitations impact on their ability to sustain work?

(Tr. 64.) The VE testified that there would be no work available for such a person. *Id*.

Lastly, the ALJ asked if Monda's testimony regarding her functioning and limitations is credited, would she be able to work. *Id*. The VE responded in the negative. *Id*.

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Monda established medically determinable, severe impairments, due to depression, anxiety, personality disorder, obsessive-compulsive disorder, obesity, sleep apnea,

3

and thyroid disorder; however, these impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Monda was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Monda is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

4

regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Monda claims the ALJ erred at step three of the sequential process by not properly considering her (1) obesity, (2) sleep apnea, (3) thyroid condition, (4) Global Assessment Functioning ("GAF") scores, and (5) activities of daily living when calculating her residual functional capacity ("RFC"). (Doc. No 23 at 1-5.)  The Commissioner contends that the ALJ properly concluded that Monda was not disabled.

### Obesity and Sleep Apnea

Monda argues that the ALJ did not consider her obesity or sleep apnea, or any cumulative effects, as stated in Appendix 1 to Subpart P of Part 404 – Listing of Impairments, 3.00 Paragraph (H) and (I).[2]

As the ALJ found Monda to have severe impairments of obesity and sleep apnea, he should have considered S.S.R. 02-1p, Titles II and XVI: Evaluation of Obesity, which explains Listing 3.00(H) and (I). S.S.R. 02-1p, in pertinent part, states as follows:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems.[3] It commonly leads to, and often complicates,

---

[2]Listing 3.0 (H) deals with sleep apnea and (I) discusses the effects of obesity on the respiratory system.

[3]To classify overweight and obesity in adults, the National Institute of Health relies on an individual's Body Mass Index ("BMI"). BMI is the ratio of an individual's weight in kilograms to the square of her height in meters ($kg/m^2$). S.S.R. 02-1p at *2. In adults, a BMI of 25-29.9 is regarded as overweight and a BMI of 30.0 or above as "obesity." *Id*. Further, the Ruling does not provide precise height and weight requirements for obesity. Instead it states that the existence of obesity is established by:

> generally rely[ing] on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height.  Thus

5

> chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus--even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

S.S.R. 02-1p at *3. In addition, because there is no listing for obesity, the Ruling mandates that at step three of the disability analysis:

> . . . . we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.
>
> * * *
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.

S.S.R. 02-1p at *5. The Ruling also cautions: "[h]owever, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the

---

> in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or consultative examiner.

S.S.R. 02-1P at *3.

6

case record." S.S.R. 02-1p at *6.

In *Bledsoe v. Barnhart*, 165 Fed Appx. 408, 412 (6th Cir. 2006), the Sixth Circuit called it "a mischaracterization to suggest that Social Security Rule 02-1p offers any particular procedural mode of analysis for obese disability claimants." The ruling "does not mandate for a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 411-12. Yet, the ALJ must still "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Negat v. Comm'r of Soc. Sec.*, 2009 WL 4981686, *3 (6th Cir. Tenn. Dec. 22, 2009) (*citing Bledsoe*, 165 Fed. App'x at 411-12.); *Rojas v. Astrue*, 2009 WL 465768, Case No. 1:07-cv-1035 (W.D. Mich. Feb. 24, 2009). The *Rojas* Court concluded that, even though the ALJ may not have ignored the evidence and expert opinion tending to support the plaintiff's claim of disability partially caused by obesity based on S.S.R. 02-1p, he accorded such evidence "legally-insufficient attention." *Id.*

Put simply, this is more than a requirement that the ALJ mention the fact of obesity in passing: "courts . . . remand[] even for a mere failure to consider obesity." *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D. Vt. 2009) (citations omitted); *see also Johnson v. Astrue*, Case No. 08-3658, 2010 WL 148411, *18 (S.D. Tex. Jan. 11, 2010) ("[T]he ALJ should develop the record on the issue of [the claimant's] obesity and how her obesity impacted her ability to function and work. . . ."); *Priestly v. Astrue*, 2009 WL 1457152, *13-14, Case No 6:08-546 (D.S.C. May 22, 2009) ("while the ALJ stated he considered the plaintiff's obesity when determining her RFC, he failed to provide any explanation as to how this severe impairment factored into his assessment.")

Here, although the ALJ found the obesity to be severe, he merely listed it as an impairment without discussing whether it increased the severity of coexisting impairments. After finding obesity to be a severe impairment, he then stated at step three:

> Obesity and thyroid disorder are not addressed in any medical listings in Appendix 1. The claimant's sleep apnea is not accompanied by findings that satisfy listing 3.10 respecting sleep disorders because the claimant has not experienced the secondary impairments required of the section.

7

(Tr. 13.)

The Commissioner argues that because there was no evidence that these impairments prevented her from working, the ALJ's conclusion was proper. While S.S.R. 02-1p does not prescribe a specific procedure for evaluation of obesity, it does make clear that sleep apnea is an effect of obesity and thus should be considered in analyzing the listings. S.S.R. 02-1p at *3, *6; *see also Dellinger v. Astrue,* 2010 WL 750363, *3-4, Case No. 5:09-310 (E.D. Ky. Mar. 1, 2010) (sleep apnea is an effect of obesity and should be considered under the listings). As the ALJ found obesity and sleep apnea to be severe impairments, he should have taken both into consideration when analyzing the listings.

Although not argued by Monda, the ALJ also did not consider her obesity or sleep apnea at steps four and five of the disability evaluation. S.S.R. 02-1p further recognizes that a claimant's obesity could affect her exertional limitations and must be considered as follows:

> Steps 4 and 5, Assessing Functioning in Adults
>
> * * *
>
> Obesity can cause limitations of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the external functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. [footnote omitted] In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and

8

> arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

S.S.R. 02-01p at *6; *see also Besecker v. Astrue*, 2008 WL 4000911, at *5-6 (S.D. Ohio Aug. 29, 2008) ("repeated references to Plaintiff's obesity in the record, including the opinions of several medical sources, should have alerted the ALJ to consider Plaintiff's obesity and its combined impact with his other impairments at Steps 2, 3 and 4 of the sequential evaluation.")

After finding Monda to have severe impairments of obesity and sleep apnea, the ALJ did not follow the procedures set forth in S.S.R. 02-1p regarding whether these impairments affect the Listings or her RFC. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[4] Having found remand is necessary, the Court need not consider Monda's arguments regarding the RFC calculation or her daily living activities.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Monda can be awarded benefits only if proof of disability is "compelling." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be

---

[4] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White<br>United States Magistrate Judge

Date:   March 28, 2011

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**